CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND *et al.*, Plaintiffs-Appellants, *v.* GAYLUR PRODUCTS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)    No. 77-1908

Opinion filed November 27, 1978.

Coghlan, Joyce and Nellis, of Chicago (James L. Coghlan, William J. Nellis, and Randall Spencer, of counsel), for appellants.

Julius Lucius Echeles, of Chicago, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

The second cause of action in the amended complaint of plaintiff, Central States, Southeast and Southwest Areas Pension Fund, an Illinois Trust, by its Trustees, Loran W. Robbins, Robert E. Schlieve, Hubert L. Payne, Marion W. Winstead, Harold G. Yates, Robert J. Baker, Howard McDougall, Leroy L. Wade, Thomas F. O'Malley and Earl N. Hoekenga (plaintiff), was directed solely against Irwin S. Weiner (defendant). The circuit court of Cook County dismissed it with prejudice for failure to state a cause of action. Plaintiff appeals, contending that it was legally sufficient.

In pertinent part the amended complaint alleged:

"1. Plaintiff CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND ('PENSION FUND') is an Illinois trust having its offices and principal place of business in the City of Chicago, County of Cook, State of Illinois. The PENSION FUND is adminstered by its Board of Trustees,

composed of plaintiffs LORAN W. ROBBINS, ROBERT E. SCHLIEVE, HUBERT L. PAYNE, MARION M. WINSTEAD, HAROLD G. YATES, ROBERT J. BAKER, HOWARD McDOUGALL, LEROY L. WADE, THOMAS F. O'MALLEY and EARL N. HOEKENGA.

2. Defendant GAYLUR PRODUCTS, INC. ('GAYLUR') is an Illinois corporation which does or has done business in the City of Chicago, County of Cook, State of Illinois.

3. Defendant IRWIN S. WEINER ('WEINER') is a resident of the County of Cook, State of Illinois.

4. On or about June 21, 1971, Defendant GAYLUR, by its President, Defendant WEINER, executed and delivered to Plaintiffs a promissory note in the principal amount of $906,004.00, due and payable February 1, 1974, bearing interest at 6% until maturity and 9% thereafter.

5. On or about October 3, 1972, Defendant GAYLUR, by its President, Defendant WEINER, executed and delivered to Plaintiffs a promissory note in the principal amount of $500,000.00, due and payable on demand, bearing interest at 8½% until maturity and 9% thereafter.* * *

6. Said promissory notes were executed and made payable at the offices of the Pension Fund in Chicago, County of Cook, State of Illinois.

7. In connection with said promissory notes, Defendant GAYLUR, by its President, Defendant WEINER, executed and delivered to Plaintiffs certain pledge and security agreements covering property of Defendant GAYLUR located in Deming, New Mexico. Defendants being in default on said notes, Plaintiffs enforced their rights against the collateral of Defendant GAYLUR by public sale held pursuant to the New Mexico Uniform Commercial Code. The sum of $50,000.00 was realized at said public sale, held March 1, 1974, leaving a deficiency of $1,356,004.00 plus interest as of the date of sale.

8. By the terms of both promissory notes, defendant GAYLUR also agreed to pay all costs of collection, including reasonable attorneys' fees. In order to collect the sums due and to enforce Plaintffs' rights in the collateral of Defendant GAYLUR, Plaintiffs have employed Teitelbaum, Wolfberg, Guild and Toback, Chicago, Illinois, and said attorneys have performed services and incurred expenses in so doing. The reasonable amount of expenses incurred to date is at least $1,000.00, and the reasonable charge for said services is at least $5,000.00. Further expenses and charges will be incurred in the prosecution of this action to judgment.

9. Defendant GAYLUR owes to Plaintiffs the amount of $1,356,004.00 plus interest at the agreed rates. Defendant GAYLUR further owes Plaintiffs all costs of collection, including attorneys' fees, as specified in paragraph eight (8) hereof.

* * *

11. Defendant WEINER was the President and sole director and shareholder of Defendant GAYLUR.

12. There exists, and at all times material hereto has existed, a unity of interest and ownership between defendants WEINER and GAYLUR, such that any individuality and separateness of Defendants WEINER and GAYLUR has ceased in that:

(a) Defendant Weiner commingled the assets of GAYLUR with those of his own and fraudulently diverted, transferred and misappropriated for his own private use and without adequate consideration on various occasions over $70,000 of assets of GAYLUR PRODUCTS. For example:

(1) On October 12, 1971 GAYLUR PRODUCTS issued a check for $1,250 payable to Defendant WEINER, for no apparent consideration.

(2) On November 15, 1971 GAYLUR PRODUCTS issued a check to Gaylur Mercantile in the amount of $560 for no apparent consideration and Gaylur Mercantile then transferred $500 to Defendant WEINER for no apparent consideration.

(3) On November 24, 1971 Gaylur Products issued a check to Gaylur Mercantile in the amount of $600 for no apparent consideration and Gaylur Mercantile then transferred to Defendant WEINER $560 for no apparent consideration.

(b) GAYLUR PRODUCTS was a mere instrumentality of the Defendant WEINER in that the Defendant made such diversions, transfers and misappropriations of the assets of his solely owned corporation, GAYLUR PRODUCTS, with the intent to defraud existing creditors of the Corporation and the Plaintiff as creditor.

(c) GAYLUR PRODUCTS was dissolved as a corporate entity, on or about December 2, 1974, and said corporation cannot compensate plaintiff for damages incurred as a result of the execution of said promissory notes.

(d) Defendant WEINER, as the President and sole shareholder of GAYLUR PRODUCTS failed to properly

maintain bookkeeping records of the corporation, and to follow the usual and standard accounting methods of recording transactions and disbursements involving corporate assets and the Defendant WEINER ignored the corporate entity structure of GAYLUR PRODUCTS, treating the corporation as the alter ego of his self, and using the assets of the corporation for his own self-aggrandizement.

13. Defendant WEINER, as alter ego of Defendant GAYLUR, owes Plaintiffs the amounts specified in paragraph nine (9) hereof."

Plaintiff asked for judgment against Weiner in the amount of $1,356,004 with interest, for reasonable costs of collection, including attorneys' fees incurred in the collection of the notes and the prosecution of the present action, and for such other and further relief as may be deemed just and proper. Defendant's motion to dismiss for failure to state a cause of action was granted.

■■■ A motion to dismiss admits as true all facts well pleaded together with all reasonable inferences which could be drawn from the facts. (*Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 347 N.E.2d 396.) A complaint will not be dismissed for failure to state a cause of action if the facts essential to its claim appear by reasonable implication. (*Johnson v. Illini Mutual Insurance Co.* (1958), 18 Ill. App. 2d 211, 151 N.E.2d 634; *Steinberg v. Chicago Medical School* (1976), 41 Ill. App. 3d 804, 354 N.E.2d 586.) Section 42(2) of the Civil Practice Act provides: "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1975, ch. 110, par. 42(2).) And section 33(3) provides: "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1975, ch. 110, par. 33(3).) It has been repeatedly held that no action should be dismissed unless it clearly appears that no set of facts could be proved under the pleadings which would entitle a plaintiff to relief. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.) Tested by these principles, we find that the second cause of action was sufficient to state a cause of action against Weiner.

It is settled law that where the corporate fiction is merely an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of the action. *State Bank of Cerro Gordo v. Benton* (1974), 22 Ill. App. 3d 1007, 317 N.E.2d 578, affirming judgment against an individual for a corporate indebtedness. See also *Loy v. Booth* (1974), 16 Ill. App. 3d 1077, 307 N.E.2d 414, *appeal denied* (1974), 56 Ill. 2d 582, in which the court affirmed the right to follow corporate funds into the hands of the sole stockholder.

In *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29, 277 N.E.2d 844, the Supreme Court stated the here-applicable governing principles:

> "The concept of disregarding the corporate existence and imposing liability personally upon the real parties to a transaction is well established and is summarized in 19 C.J.S., Corporations, sec. 839, page 264: 'Where the director or officer is the alter ego of the corporation, that is, where there is such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice, such director of officer will be held liable for obligations of the corporation.' (See also, 18 Am. Jur. 2d, Corporations, sec. 15.) The concept has been variously announced, defined, explained and applied in decisions of many State and Federal courts. (See annotations in 1 A.L.R. 610, 34 A.L.R. 597, and 63 A.L.R.2d 1051.) It has likewise been accepted and applied by the courts of this State for many years. *Lachman v. Martin* (1891), 139 Ill. 450; *Donovan v. Purtell* (1905), 216 Ill. 629; *Superior Coal Co. v. Department of Finance* (1941), 377 Ill. 282; *Dregne v. Five Cent Cab Co.* (1943), 381 Ill. 594; *Carrillo v. O'Hara* (1948), 400 Ill. 518; *Tilley v. Shippee* (1958), 12 Ill. 2d 616."

For a comprehensive article concerned with this subject, see R.J. Broida, *The History of the Development of the Remedy of "Piercing the Corporate Veil,"* 65 Ill. B. J. 522 (1977).

In *Berlinger's, Inc. v. Beef's Finest, Inc.* (1978), 57 Ill. App. 3d 319, 325, 372 N.E.2d 1043, the court, in affirming a judgment against the sole stockholder of a corporation, said:

> "* * * In summarization, the corporate veil will be pierced when the existence between the director or officer and the corporation has attained such unity of interest that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice. *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29, 277 N.E.2d 844, 851-52; *Gowdy* [20 Ill. App. 3d 514, 528, 314 N.E.2d 549, 560], at 528."

■■ The appellate court, in *Chicago-Crawford Currency Exchange, Inc. v. Thillens, Inc.* (1964), 48 Ill. App. 2d 366, 373, 199 N.E.2d 295, *appeal denied* (1964), 30 Ill. 2d 626, said in affirming a judgment against an individual:

> "Defendant Thillens, Inc., also argues that it is an entity separate from its shareholders, and the identity of the 'shareholder and corporation does not stand as an undisputed fact.' The record

shows that defendant Melvin Thillens is the sole stockholder and chief executive officer of defendant Thillens, Inc. It has been frequently held that the owner of all of the stock of a corporation will be treated as its alter ego, and these cases have refuted the fiction of separate legal entities in cases where used as a protection to fraud or other illegal transactions. (Donovan v. Purtell, 216 Ill. 629, 75 NE 334 (1905).) In Illinois Interior Finish Co. v. Poenie, 277 Ill App 554, 566 (1934), the court said:

> 'In such cases as this the courts will not permit themselves to be blinded nor deceived by mere forms of law, but, regardless of the fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.' "

Actual fraud is not necessarily a predicate for discarding the theory of separate corporate existence. It may also be discarded to prevent injustice or inequitable consequences. *Cohen v. Williams* (1975), 294 Ala. 417, 318 So. 2d 279.

In *State Bank of Cerro Gordo v. Benton* (1974), 22 Ill. App. 3d 1007, 1010, 317 N.E.2d 578, it was stated:

> "Each complaint in this case alleges the transfer by the defendant of corporate funds to himself, that such transfer was made without consideration and with the intent to defraud existing creditors of the corporation and the plaintiff as creditor.* * *"

The amended complaint here specifically alleges that Weiner was the president and sole director and shareholder of the corporation, that there exists and has existed at all times material a unity of interest and ownership between Weiner and the corporation such that any individuality and separateness of Weiner and the corporation has ceased, in that he commingled the assets of the corporation with those of his own and fraudulently diverted and misappropriated for his own private use and without adequate consideration on various occasions over $70,000 of assets of the corporation, that the corporation was a mere instrumentality of Weiner in that he made such diversions and misappropriations with the intent to defraud existing creditors of the corporation and plaintiff as creditor, that the corporation was dissolved as a corporate entity and cannot compensate plaintiff for damages as a result of the execution of the promissory notes involved and that Weiner as alter ego of the corporation owes plaintiff the amounts stated as diverted and misappropriated by him.

These allegations are sufficient to permit proof by plaintiff that corporate assets were diverted by Weiner to the injury of the corporation and its creditors.

Defendant contends that the allegations of a unity of interest and

ownership, that Weiner is the alter ego of the corporation and that his use of the corporate funds were fraudulent, are mere conclusions unsupported by facts. Evidence to support or overcome these allegations is principally within the defendant's knowledge. It can be ascertained by discovery.

Further, as has been stated, "there is no clear distinction between statements of 'evidentiary facts,' 'ultimate facts' and 'conclusions of law.'" (2 Nichols, Illinois Civil Practice §777 (1961).) The allegations here complained of would appear to be as factual as they could be made under the circumstances.

Defendant also argues that the amended complaint is insufficient because no facts are alleged to support the claim that over $70,000 of corporate funds were diverted to his use; that the amounts alleged in paragraph 12 "do not compute." But the amounts there set out were alleged only as examples, not as amounts totalling over $70,000. Discovery of other amounts, if any, and further amendment of the pleadings will be available to plaintiff.

■■ Defendant further argues that the amended complaint is insufficient because there is no allegation that his misconduct caused the dissolution of the corporation. This contention is without merit for the reason that the cause of the dissolution is immaterial. The fact of dissolution is material only to show that the corporation could not meet its obligations and that plaintiff has a right to follow the corporation's funds which defendant had allegedly wrongfully diverted to his own use.

The trial court erred in dismissing with prejudice the second cause of action against Weiner. The judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

BUCKLEY and LINN, JJ., concur.